# UNITED STATES DISTRICT COURT

# WESTERN DISTRICT OF LOUISIANA

# SHREVEPORT DIVISION

| | |
|---|---|
| JERRY STALLINGS | CIVIL ACTION NO. : 5:04CV1012 |
| VERSUS | JUDGE HICKS |
| UNUM PROVIDENT CORPORATION | MAGISTRATE JUDGE HORNSBY |

## MEMORANDUM RULING

This matter is before the Court on a motion for trial on the stipulated record. [Doc. No. 14] Plaintiff, Jerry Stallings, filed the present suit against Defendant, Unum Life Insurance Co of America ("UNUM"), seeking long-term disability benefits pursuant to an employee welfare benefit plan. For the reasons which follow, the motion for trial on the stipulated record is **GRANTED**, and all of Plaintiff's claims are **DISMISSED WITH PREJUDICE**.

## FACTUAL BACKGROUND

### A. The Long Term Disability Plan

Effective on April 1, 1989, Murphy Oil Corporation established for the benefit of its employees, a welfare benefit plan (the "Plan") which provided, *inter alia*, certain long-term disability ("LTD") benefits. A true and correct copy of the LTD Plan and Policy and all applicable amendments is in the administrative record, a complete copy of which has been filed into the record. See Doc. No. 14, UACL 00001-01071.

The LTD plan defines "disabled" as follows:

> . . . because of injury or sickness
>
> 1. The insured cannot perform each of the material duties of his regular occupation; and
>
> 2. After benefits have been paid for 24 months, the insured cannot perform each of the material duties of any gainful occupation for which he is reasonably fitted by training, education or experience.

[Id. at UACL 01061]. Accordingly, the definition changes after 24 months of benefits.

The Plan is an employee welfare benefit plan under the Employee Retirement Income Security Act of 1974 ( ERISA). At all times pertinent hereto, UNUM was the claim administrator of the Plan. The Plan grants UNUM discretionary authority to determine eligibility for benefits and to interpret the terms and provisions of the policy. [Id. at UACL 01045]. Any LTD benefits paid under the Plan are paid by UNUM.

**B.    Stallings' Employment and Claim for Disability Benefits**

Stallings began working for Murphy Oil in 1992. [Id. at UACL 00198] He worked as a network administrator and earned $61,140.00 per year ($5,095 per month). His last day at work was February 29, 2000. [Id. at UACL 00198]. On June 5, 2000, he filed a claim for LTD benefits which stated that he had been unable to work since March 1, 2000. [Id. at UACL 000199, 202]. The LTD plan has a 180-day elimination period [Id. at UACL 01068] which for Stallings extended from March 1, 2000 to August 27, 2000. He then received disability payments in the amount of $3,057.00 per month from August 28, 2000 to August 28, 2002, a period of 24 months. According to the plan, Stallings would be eligible to continue receiving benefits until he reached the age of 65 provided he remained "disabled" as defined by the LTD plan. However, having already received 24 months of benefits, the definition of "disabled" changed.

## C. After Benefits Had Been Paid for Twenty-four Months, Stallings' Claim for Further Benefits Was As Denied.

Stallings' initial 24 months of benefits ended on August 28, 2002. On August 28, 2002, Dr. Shailesh Vora, a neurologist and one of Stallings' treating physicians, advised UNUM that Stallings could sit for 1-2 hours at a time for up to 12 hours per day; he could walk less than 1 hour at a time for less than 1 hour per day; he could stand less than 1 hour at a time for less than 1 hour per day; and he could lift/carry 5 pounds occasionally. [Id. at UACL 00772]. On September 9, 2002, UNUM conducted a Transferable Skills Assessment. [Id. at UACL 00775-00777]. That assessment identified three examples of occupations which corresponded to similar work activities in similar industries that Stallings had demonstrated during his work history and which accommodated his physical capabilities.[1] Accordingly, UNUM advised Stallings in correspondence dated September 18, 2002 that he was no longer "disabled" as that term was now defined by the Plan.[2] [Id. at UACL 00788].

## D. The First Appeal

Within days of UNUM's denial of benefits (based in part on Dr. Vora's prescribed limitations), Dr. Vora wrote another letter (dated September 23, 2002) which stated that Stallings was "disabled to do any kind of job." [Id. at UACL 00827]. The next week, Stalling's psychiatrist wrote a letter stating that "[a]fter reviewing the letter from Dr. Vora

---

[1]Contrary to Stallings argument, the positions identified in the assessment did not include his previous job at Murphy, since that position was found to include two different occupations - only one of which was characterized as "sedentary." [Id. at 00225]

[2]Stallings would later receive a check from UNUM in the amount of $6,114.00 which was tendered as a transitional payment after his LTD benefits were denied. [Id. at UACL 00940].

and interviewing Mr. Stallings" it was her opinion that he remained "unable to work in any type of work setting" and that "any attempt to return to the work place would ultimately end of causing regression in his mental status, with possible re-hospitalization." [Id. at UACL 825]. On January 21, 2003, Stallings' neurologist wrote a letter stating that Stallings was "unable to work in any type of work setting" and that his "physical condition and symptoms [were] unabating, and additionally exacerbating his psychological condition." [Id. at UACL 00824].

Stallings submitted these "updated" medical records and requested an appeal of UNUM's decision to terminate his LTD benefits. [Id. at UACL 00794]. UNUM conducted an in-house medical review on January 29, 2003. [Id. at UACL 00815]. That review found that Stallings' documented medical findings of "some impairment" should not prevent him from performing a sedentary occupation and that the available data did not support a finding that his "pain, dizziness, and medical side effects were of such a consequence as to prevent performance of any work." [Id. at UACL 00812]. Accordingly, by correspondence dated February 13, 2003, UNUM notified Stallings that the denial would be upheld. [Id. at UACL 00819].

### E. The Second Appeal

By correspondence dated March 3, 2003, Stallings requested a second appeal. [Id. at UACL 00821] He submitted medical records on March 25, 2003 [Id. at UACL 000828], May 15, 2003 [Id. at UACL 00841], and June 16, 2003 [Id. at UACL 00868]. UNUM conducted another in-house medical review on July 1, 2003. [Id. at UACL 00877]. That review stated: "Still no evidence of nonpsychiatric grounds to justify [restrictions and

limitations] of no work." [Id.] Accordingly, by correspondence dated July 23, 2003, UNUM advised that the denial would be upheld. [Id. at UACL 00882].

### F. The Third Appeal

In August of 2003, Stallings requested a third appeal and submitted more medical records. [Id. at UACL 00891; 00897]. UNUM conducted another in-house medical review on September 11, 2003. [Id. at UACL 00901]. In that review, Dr. Sternberg, a neurosurgeon, noted that although the new evaluation of Stallings suggested lumbar stenosis which was primarily symptomatic with standing or walking, it should not prevent him from doing sedentary work with the ability to change positions frequently. [Id. at 00900].

On September 26, 2003, UNUM also obtained an Independent Medical Review regarding Stallings' psychological impairment. [Id. at UACL 00911-927]. In that review, Dr. Solovey, a clinical psychologist, noted that Stallings' doctors had failed to provide any clinical representation reflecting the symptoms for Major Depressive Episode or for Dependent Personality Disorder under the Diagnostic and Statistical Manual of Mental Disorders-IV. [Id. at UACL 00924-00925]. Thus, they had failed to present documentation of any restrictions or limitations related to any psychiatric impairment related to those diagnoses. [Id.] Accordingly, by correspondence dated October 16, 2003, UNUM notified Stallings that the third appeal was complete and the denial was again upheld. [Id. at UACL 00932].

### G. The Fourth Appeal

In late November/early December of 2003, Stallings requested a fourth appeal and submitted additional information. [Id. at UACL 00944; 00961]. On January 14, 2003, UNUM conducted another in-house medical review. [Id. at UACL 00967-00969]. Again, this review found that the information submitted did not provide clinical information that would indicate that Stallings totally lacked functional ability. [Id. at UACL 00968]. Dr. Sternberg added a notation on the review to the effect that sedentary work with accommodation to allow for only brief periods of standing or walking would be a reasonable restriction/limitation. [Id. at UACL 00967]. Accordingly, by correspondence dated January 19, 2004, UNUM advised Stalling that once again, the decision to terminate his LTD benefits was unchanged. [Id. at UACL 00970-971].

### H. The Social Security Set-Off

Stallings began receiving Social Security Disability Income ("SSDI") benefits in January 2002 in the amount of $1,650.00, monthly, retroactive back to March 2000. This benefit is payable for the duration of disability, as determined by the Social Security Administration. The LTD Policy provides that state UNUM can offset the gross monthly benefit amount with "Other Income Benefits" including SSDI benefits paid to an employee. [Id. at UACL 01057, 01059]. Accordingly, if this Court enters judgment against UNUM, UNUM seeks a set-off in the amount of Stallings' SSDI benefits.

## LAW AND ANALYSIS

### A. Standard of Review Under ERISA

It is well settled that the standard of review in an ERISA case is governed by the language of the plan at issue. If that plan grants the administrator discretionary authority to determine eligibility for benefits or construe the terms of the plan, then the court must use an "abuse of discretion" standard of review. Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 109 S. Ct. 948; Duhon v. Texaco Inc., 15 F.3d 1302 (5th Cir. 1994); Wildbur v. ARCO Chemical Co., 974 F.2d 631 (5th Cir. 1992). Here, the Plan grants UNUM "discretionary authority to determine your eligibility for benefits and to interpret the terms and provisions of the policy." (UACL 01045). Accordingly, the "abuse of discretion" standard applies.

In applying the abuse of discretion standard, the Court should analyze whether the administrator acted arbitrarily or capriciously. See Meditrust Financial Services, Corp. v. Sterling Chemicals, Inc., 168 F.3d 211, 214 (5th Cir. 1999)(*quoting* Sweatman v. Commercial Union Ins., Co., 39 F.3d 594, 601 (5th Cir. 1994)). When reviewing for arbitrary and capricious actions resulting in an abuse of discretion, an administrator's decision should be affirmed if it is supported by substantial evidence. See Meditrust Financial Services, Corp., 168 F.3d at 215.

A decision is arbitrary only if "made without a rational connection between the known facts and the decision or between the found facts and the evidence." Id. (*quoting* Bellaire Gen. Hosp. v. Blue Cross Blue Shield, 97 F.3d 822, 828-29 (5th Cir. 1994)). The Court's review of the administrator's decision "need not be particularly complex or

technical; it need only assure that the administrator's decision fall somewhere on a continuum of reasonableness–even if on the low end." Vega v. National Life Ins. Services, Inc., 188 F.3d 287, 297 (5th Cir. 1999).

Courts apply a sliding scale to the abuse of discretion standard where it is determined that the administrator acted under a conflict of interest. Lain v. UNUM Life Ins. Co. of America, 279 F.3d 337, 343 (5th Cir. 2002). "'The greater the evidence of conflict on the part of the administrator, the less deferential our abuse of discretion standard will be.' When a minimal basis for a conflict is established, we review the decision with 'only a *modicum less* deference than we would otherwise.'" Id. (*quoting* Vega, 188 F.3d at 299)(emphasis in original).

### B. UNUM's Determination in Light of the Administrative Record

In evaluating whether a plan administrator abused its discretion in making a factual determination, a district court may only consider the evidence that was available to the administrator at the time of his decision. See Southern Farm Bureau Life Ins. Co. v. Moore, 993 F.2d 98, 102 (5t Cir. 1993). See also Meditrust Financial Services, Corp. v. Sterling Chemicals, Inc., 168 F.3d 211, 214 (5th Cir. 1999). Evidence which was not a part of the administrative record cannot be admitted in the district court to resolve a factual issue which the administrator relied upon when resolving the merits of the claim. See Vega v. National Life Ins. Serv., Inc., 188 F.3d 287, 289 (5th Cir. 1999). As the Fifth Circuit clarified:

> As a result, a district court must inquire only whether the "record adequately supports the administrator's decision."; from that inquiry it can conclude that the administrator abused its discretion if the administrator denied the claim "[w]ithout some concrete evidence in the administrative record."

Gooden v. Provident Life & Acc. Ins. Co., 250 F.3d, 329, 333 (5th Cir. 2001)(*quoting* Vega, 188 F.3d at 298, 302).

UNUM's decision that Stallings was not disabled was a factual determination. Meditrust Financial Services, *supra*. UNUM initially determined that Stallings was not "disabled" (as that term was defined by the Plan) in September of 2002. That factual determination was supported by the following concrete evidence contained in the administrative record at that time:

- Dr. Vora's August 28, 2002 opinion that Stallings could sit for 1-2 hours per day for up to 12 hours per day; walk less than 1 hour at a time for less than 1 hour per day; and lift/carry 5 pounds occasionally [Doc. No. 14 at UACL 00772];

- The Transferable Skills Assessment conducted on September 9, 2002 [Id. at 00775-777]

Accordingly, the Court finds that there was a "rational connection" between the known facts and the decision, and that UNUM's determination was reasonable.

Stallings appealed the decision by submitting a September 23, 2002 letter from Dr. Vora which stated that Stallings was "disabled to do any kind of job." [Id. at UACL 00827]. He also submitted letters from Dr. Boswell and Dr. Kundo which opined that Stallings was "unable to work in any type of work environment" based, at least in part, on his mental and psychological condition. [Id. at UACL 00825; 00824]. Ultimately, Stallings appealed four times. Each time, UNUM upheld the denial of benefits.

UNUM's decision to uphold the denial of LTD benefits is supported by the following additional concrete evidence contained in the administrative record:

- The January 29, 2003 in-house medical review, which found that the documented medical findings did not support a finding that he could not perform work [Id. at UACL 00772];

- The July 1, 2003 in-house medical review, which found no evidence of non-psychiatric grounds to justify restrictions and limitations of no work [Id. at UACL 00887];

- The August 25, 2003 in-house medical review, which found that Stallings' lumbar stenosis should not prevent him from sedentary activity [Id. at UACL 00901];

- The September 26, 2003 independent medical review regarding Stallings' psychological impairment, which found that Stallings had failed to provide any clinical representations or documentation to support any restrictions or limitations based on that impairment [Id. at UACL 009247-00925].

Accordingly, the Court again finds that there was a "rational connection" between the available information and UNUM's decision, and that UNUM's determination was reasonable.

Applying the standards discussed above to the administrative record, the Court concludes that UNUM did not abuse its discretion in denying Stallings' claim. UNUM's determination is consistent with a correct interpretation of the Plan and a reasonable determination of the facts based on the administrative record.[3] The jurisprudence is clear that an administrator does not abuse its discretion by denying a claim based upon an independent examination which disagrees with the plaintiff's physicians. See Black and Decker Disability Plan v. Nord, 538 U.S. 822, 123 S.Ct. 1965 (2003); Meditrust Financial Services Corp. v. The Sterling Chemicals, Inc., 168 F.3d 211, 215 n.7 (5th Cir. 1999); Sweatman v. Commercial Union Ins. Co., 39 F.3d 594, 603 (5th Cir. 1994). See also Alcorn v. The Sterling Chemicals, Inc., 991 F. Supp. 609, 616-17 (S.D. Texas)(*citing*

---

[3]Lain v. UNUM Life Ins. Co. of America, 279 F.3d 337 (5th Cir. 2002), which dealt was the definition of "disabled" during the first 24 months of benefits, does not support Stallings' argument that UNUM's interpretation of the Plan was legally incorrect.

*cases*). Furthermore, UNUM was not bound by the Social Security Administration's determination that Stallings was disabled. See Black and Decker, *supra*; Sparks v. UNUM Life Ins. Co. of Amer., 225 F. 3d 659, 2000 WL 1033003 *3 (6th Cir. 2000). Accordingly, even according UNUM a *modicum less* deference based on a potential conflict, the Court finds that UNUM did not abuse its discretion in denying Stalling's claim for LTD benefits beyond the initial 24 month period.

## CONCLUSION

For the foregoing reasons, the motion for trial on the stipulated record [Doc. No. 14] is **GRANTED**, and all claims made by Plaintiff Jerry Stallings against Unum Life Insurance Co of America are **DISMISSED WITH PREJUDICE.**

**THUS DONE AND SIGNED** in Shreveport, Louisiana, this 10th day of February, 2006.

S. MAURICE HICKS, JR.
UNITED STATES DISTRICT JUDGE